*MHN*

**RECEIVED**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MAY 8 2008 *aew*
5-8-2008
**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

United States of America ex rel.                )
                                                )
  KAFELE PARKER B37685                           )
(Full name and prison number)                    )
(Include name under which convicted)             )
                                                )
PETITIONER                                       )

**08CV2664
JUDGE PALLMEYER
MAG. JUDGE ASHMAN**

                                                )
        vs.                                      )
                                                )
  EDDIE JONES                                    )
(Warden, Superintendent, or authorized           )
person having custody of petitioner)             )
                                                )
RESPONDENT, and                                  )
                                                )
**(Fill in the following blank only if judgment   )
attacked imposes a sentence to commence           )
in the future)**                                  )
                                                )
ATTORNEY GENERAL OF THE STATE OF                 )        Case Number of State Court Conviction:
                                                )
                                                )          97CR5351
_____                   )
(State where judgment entered)                   )

### PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1.  Name and location of court where conviction entered:  Circuit Court of Cook County

    Illinois

2.  Date of judgment of conviction: March 24, 1998

3.  Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

    First Degree Murder and Attempt Murder

4.  Sentence(s) imposed: 60 years/30 years Consecutive (90 Years)

5.  What was your plea? (Check one)        (A) Not guilty      ( x )
                                           (B) Guilty          (   )
                                           (C) Nolo contendere (   )

    If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

_____

Revised: 7/20/05

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):       Jury ( )          Judge only ( x )

2. Did you testify at trial?          YES ( )          NO      ( x )

3. Did you appeal from the conviction or the sentence imposed?  YES ( x )  NO ( )

   (A)  If you appealed, give the

       (1)  Name of court:   Circuit Court of Cook County

       (2)  Result:   Conviction and Sentence Affirmed

       (3)  Date of ruling:   February 25,2000

       (4)  Issues raised:   Failure to prove guilty beyond a reasonable

         doubt,Erroneous denial of continuance

   (B)  If you did not appeal, explain briefly why not:

4. Did you appeal, or seek leave to appeal, to the highest state court?  YES ( x )       NO ( )

   (A)  If yes, give the

       (1)  Result:   Summary Dismissed

       (2)  Date of ruling:   On or about March 24,2000

       (3)  Issues raised:   Consecutive sentences violation U.S.Supreme

         Court ruling Apprendi v. New Jersey

   (B)  If no, why not:

5. Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes ( x )  No ( )
                                       Filed:6-27-06
   If yes, give (A) date of petition: Docketed    (B) date *certiorari* was denied:      10-2=06
                                       7-3-06

Revised: 7/20/05

## PART II – COLLATERAL PROCEEDINGS

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

    YES (x)  NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A. Name of court:   Circuit Court of Cook County

    B. Date of filing:   May 10,2004

    C. Issues raised:   Perjured testimony of Detective John Roberts,

    Assistance of Counsel:Failed to have shell castins tested for
    forensic fingerprints,Fail to suppress identification,Fail to
    to file a motion for Quash Arrest

    D. Did you receive an evidentiary hearing on your petition?      YES ( )  NO (x)

    E. What was the court's ruling?

    F. Date of court's ruling:

    G. Did you appeal from the ruling on your petition?      YES ( )  NO (x)

    H. (a)    If yes,  (1) what was the result?

              (2) date of decision:

       (b)    If no, explain briefly why not:

    I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

    YES (x)   NO ( )

       (a)    If yes,  (1) what was the result?    UnNone

              (2) date of decision:    UnNone

       (b)    If no, explain briefly why not:

Revised: 7/20/05

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( )    NO (x)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.    Nature of proceeding    _____

        2.    Date petition filed    _____

        3.    Ruling on the petition    _____

        4.    Date of ruling    _____

        5.    If you appealed, what was
            the ruling on appeal?    _____

        6.    Date of ruling on appeal    _____

        7.    If there was a further appeal,
            what was the ruling ?    _____

        8.    Date of ruling on appeal    _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?    YES ( )    NO (x)

    A. If yes, give name of court, case title and case number: _____

_____

    B. Did the court rule on your petition? If so, state

        (1) Ruling: _____

        (2)   Date: _____

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?    YES ( )    NO (x)

    If yes, explain: _____

_____

Revised: 7/20/05

**PART III – PETITIONER'S CLAIMS**

1.    State <u>briefly</u> every ground on which you claim that you are being held unlawfully.  Summarize <u>briefly</u> the <u>facts</u> supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)  Ground one _____
Supporting facts (tell your story <u>briefly</u> without citing cases or law):

KAFELE PARKER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN

VIOLATION OF THE SIXTH AMENDMENT OF THE FEDERAL CONSTITUTION,

WHERE TRIAL COUNSEL FAILED TO HAVE FORENSIC TESTING PERFORMED ON

THE SPENT SHELL CASINGS RECOVERED FROM THE CRIME SCENE TO DETER-

MINE WHETHER PETITIONER PARKER'S FINGERPRINTS WERE PRESENT.


(B)  Ground two _____
Supporting facts:

PETITIONER PARKER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL,

IN VIOLATION OF THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION,

WHERE TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPRESS, WHERE THE

IDENTIFICATION OF PETITIONER WAS INCONSISTENT AND UNRELIABLE.

5

Revised: 7/20/05

(C)  Ground three _____
     Supporting facts:

PETITIONER PARKER WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW,

IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE FED-

ERAL CONSTITUTION,WHERE THE PROSECUTION ALLOWED TO GO UNCORRECTED

THE PERJURED TESTIMONY OF DETECTIVE JOHN ROBERTS.

_____

_____

_____

(D)  Ground four _____
     Supporting facts:

PETITIONER PARKER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL,IN

VIOLATION OF THE SIXTH AMENDMENT OF THE FEDERAL CONSTITUTION,

WHERE TRIAL COUNSEL FAILED TO FILE A MOTION TO QUASH ARREST,WHERE

THE DETECTIVES HAD NO PROBABLE CAUSE TO ARREST PETITIONER.

_____

_____

_____

2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?

        YES (x)   NO ( )

3.  If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

_____

_____

Revised: 7/20/05

## PART III – PETITIONER'S CLAIMS

1.    State briefly every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(E) Ground Five
        Supporting facts (tell your story briefly without citing cases or law):

PETITIONER PARKER WAS DENIED DUE PROCESS OF THE LAW,IN VIOLATION

OF THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUION,WHEREHHE

WAS DENIED AN OPPORTUNITY TO PRESENT MITIGATION EVIDENCE WHEN

THE TRIAL COURT DENIED HIM A BRIEF CONTINUANCE AFTER WITNESS

BECAME ILL AND COULD NOT TESTIFY IN HIS BEHALF.


(F) Ground Six
        Supporting facts:

THE CONSECUTIVE SENTENCES IMPOSED ON PARKER ARE UNCONSTITUTIONAL

UNDER APPRENDI. V. NEW JERSEY BECAUSE A FACT THAT   INCREASED THE

PRESCRIBED RANGE OF PENALTIES WHETHER SEVERE BODILY INJURY WAS

INFLICTED DURING THE COMMISSION OF THE OFFENSE-WAS NOT CHARGED IN

THE INDICTMENT,SUBMITTED TO A JURY,AND PROVED BEYOND A REASONABLE

DOUBT,IN VIOLATION OF THE SIXTH AMENDMENT.

Revised: 7/20/05

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A)  At preliminary hearing ___UnNone Address___

(B)  At arraignment and plea ___UnNone Address___

(C)  At trial ___

(D)  At sentencing ___

(E)  On appeal ___

(F)  In any post-conviction proceeding _None_ ___

(G)  Other (state): ___

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO (**x**)

Name and location of the court which imposed the sentence:Circuit Court of Cook County

Date and length of sentence to be served in the future 90 years Outdate 1-19-42

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: 5-5-08
      (Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_Kafele Parker_
(Signature of petitioner)

B37685
(I.D. Number)

P.O. Box 99   Pontiac, IL 61764
(Address)

Revised: 7/20/05

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel.,  )
                                     )
     Kafele Parker               )
                                     )
        Petitioner,        )      Case No._____
                                   )
        V.                     )
                                   )
     Eddie Jones              )
                                   )
        Respondent,       )

## MEMORANDUM OF LAW IN SUPPORT OF PETITION
## FOR WRIT OF HABEAS CORPUS

### 1. INTRODUCTION

Petitoner is filing his Petition for Habeas Corpus
Relief Pursuant to Title 28 U.S.C 2254 seekig review of his
State Court Conviction entered on March 24,1998 in the Circuit
Court of Cook County,Illinois for First Degree Murder,and
Attempt Murder.

### 2. STANDARD OF REVIEW

Pro se habeas petitions must be given liberal construc-
tion and petitioner is not required to identify legal theories or
offer case citations in order to be entitled to relief.Frey v.
Schuetzle,78 F.3d 359 (8th Cir. 1996); Meatly v. Artuz, 886 F.2d

1.

1009 (E.D.NY. 1995)(because habeas corpus petitioner was proceeding pro se, District Court would treat his memorandum of law as incorporated into his petition): Thompson v.Missouri Board of Parole. 929 F.2d 396 (8th Cir.1991) rehearing denied (pro se habeas petiton should be read with appropriate benevolence): Green v. Michigan Department of Corrections, 315 F.2d 546 (6th Cir .1963), appeal after remand,339 F.2d 139,cert denied,85 S.ct. 1550.

Moreover,Petitioner's claim for habeas review are "sufficient to establish by clear and convincing evidence that but for the constitutional errors,no reasonable factfinder would have found the applicant guilty of the underlying offenses."Title 28 U.S.C 2254 (e)(b).

Petitioner is entitled to an evidentiary hearing if he alleges facts which,if proven,would entitle him to relief,and he shows that he did not recieve a full and fair hearing in the state court,either at the time of trial, or in a collateral proceedin. The District Court is required to make its determinations as to the sufficiency of the state court finding from an independent review of the record,or otherwise grant an evidentiary hearing and make its own findings on the merits. Jones v.Wood.114 F.3d 1002 (9th Cir.1997).Also,where a review of the entire state court record is necessary in a habeas proceeding,and the parties have failed to supply the court wit that record,the Court has an obligation to obtain the record for itself.Jones v.Wood, supra.

3. CONSTITUTIONAL ISSUES PRESENTED FOR REVIEW.

(A)Ground One.

   KAFELE PARKER WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT OF THE FEDERAL
CONSTITUTION,WHERE TRIAL COUNSEL FAILED TO HAVE FORENSIC
TESTING PERFORMED ON THE SPENT SHELL CASINGS RECOVERED FROM
THE CRIME SCENE TO DETERMINE WHETHER PETITIONER PARKER'S
FINGERPRINTS WERE PRESENT.

   During their investigation of the instant shooting,the
Chicago Police Crime Lab recovered a total of seventeen (17)
spent shell casings from different areas of the crime scene.
In the area around the victim,Booker Flowers,police recovered
seven (7) 9-millimeter cartridges,and two (2) .380 cartridges.
On Kildare street,police recovered four (4) .380 cartridges,and
two (2) 9-millimeter cartridges lying in the street,and two (2)
.380 cartridges on the sidewalk.(T.R. F-10-13) Because Petitioner
Parker was asserting an alibi defence at trial,counsel was obli-
gated to have testing performed on the recovered shell casings to
determine whether Petitioner Parker's fingerprints were present
on any of them.

   In order to prevail on a federal claim of ineffective
assistance of counsel, a defendant must satisfy a two prong test.
First,a defendant mudt prove that trial counsel's performance
fell below an objective standard of reasonableness. And second,
that there is a reasonable probability that,but for counsel's
deficiencies,the results of the proceedings would have been
different.A reasonable probability is one that is sufficient to

3.

undermine confidence in the outcome of the trial. <u>Bell v. Cone</u>, 535 U.S. 362,120 S.Ct. 1495 (2000).

In the instant case,the sole evidence linking Petitioner Parker to the offence was the inconsistent and unreliable testimony of the State'a occurrence witnesses Antwan Mims,and Quentin and Kevin McCaster.Had counsel had forensic testing performed on the recovered shell castings,and someone other than Petitioner Parker's fingerprints were discovered.It would have lended substantial credence to Petitioner's assertion that he was not responsible for the shooting.

Although there was no pre-existing forensic test result to be admitted in the instant case,this fact does not diminish the gravity of counsel's error.Petitioner Parker's defence was pre-mised on the fact that he was accompanying his wife en route to her docter's appointment at Bethany Hospital at the time the offence was being committed.This assertion was corroborated by Calvin Ridgell,a security guard at Bethany Hospital,who testi-fied that Petitioner and his wife were both present at the hospital at 11:41 a.m. (T.R. B-183-184)

Given the fact that the recovered shell castings were the only pieces of physical evidence inthe State's possession --and the prosecution used this evidence to support its theory of the case --counsel had an concomitant duty to examine the casings to determine whether they could be used to <u>exclude</u> Petitioner as one of the shooters.

4.

(B) Ground Two

   PETITIONER PARKER WAS DENIED THE EFFECTIVE ASSISTANCE OF
COUNSEL,IN VIOLATION OF THE SIXTH AMENDMENT TO THE FEDERAL
CONSTITUTION,WHERE TRIAL COUNSEL FAILED TO FILE A MOTION TO
SUPPRESS,WHERE THE IDENTIFICATION OF PETITIONER WAS INCON-
SISTENT AND UNRELIABLE.

   Petitioner Parker contends that trial counsel should have
filed a motion to suppress prior to trial,where the prosecution
witnesses had little opportunity to observe the offenders,and
their statements concerning the actions of the offenders were
contradictory.Futhermore,the conduct of the witnesses in failing
to immediately identify Petitioner,whom ,according to their
testimony they had known for years,as the shooter was contradic-
tory to human experience.

   Under Illinois Law,when evaluating identification testi-
mony,the court should assess:(1) the witnesses opportunity to
view the Petitioner at the time of the offence; (2) the witness'
degree of attention;(3) the accuracy of the  witness prior
description;(4) the witness' level of certainty at the identifi-
cation confrontation, and (5) the length of time between the
offense and the identification. People v.Slim, 127 Ill.2d 302,537
N.E.2d 317 (1989).

   Petitioner Parker's identification as one of the particpant
in the offense is questionable at best.Antwan Mims,Quentin and
Kevin McCaster were members of the Traveling Vice Lords street
gang in January,1997.(A.29,A.146,B.19-21) Mims testified that he
saw Booker Flowers another member of the street gang,standing on

the corner of Madison and Kildare. (A.31) Three members of the
Gangster Disciples street gang approached Mr.Flowers and told him
that he would have to sell drugs in the alley. (A.33) Quentin
McCaster testified that the two gangs were enemies.This notwith-
standing,Flowers laughed in return and left the area. (A.33)

The next day,Flowers,Wyatt Hayes,Mims and Quentin McCaster
were standing on the northwest corner of Madison and Kildare.
(A.37-38,A.156) Kevin McCaster was across the street,on his way
to join his friends. (B.23-24) Some of the members of the Gang-
ster Disciples were standing on the southeast corner.(A.38-39,
B.25) Mims testified that he saw a car belonging to th Gangster
disciples (although he failed to state which individual member
owned it) pull into the lot side of the street where the other
Gangster Disciples were standing. (A.40-41) A brief converstaion
occured between the people in the car and the members of the
gang. (A.40)

The people in the car drove over to the side of the street
where Mims,Hayes,Flowers and Quentin McCaster stood.(A.42,A.159,
B.29) according to Mims,Petitioner Parker got out of the rear
driver's side first and started shooting at the people on the
northeast corner. (A.44,A.160-161) They claimed that the
co-defendant Walter Cage got out of the front passenger seat,ran
around the car,and started firing at the people on the corner.
(A.168) In contrast,Kevin McCaster said Cage exited the rear dri-
ver's side first and Petitioner exited the front passenger seat.
(B.31)

6.

Each identification of Petitoner Parker was substantially
flawed.First,there is the testimony of Mims. Mims' version of the
events that transpired were inherently incredible.Mims stated
that he immediately recognized Petitioner when he exited the car
and began shooting.However,this would be almost impossible,given
the fact that both of the McCasters stated that the offender wore
a ski mask which covered his face from nose down;and wore a
"hoody" which covered his head.The prosecution's explanation for
this amazing identification was that Mims could make such an
identification of Petitioner was because he had known Petitioner
for a numder of years.

Mims testified that he and Petitioner Parker had attended
the same grammar school,and that he had spoken with,and been in
the presence of Petitioner several hundreds of times. (E.59) Yet,
when the police arrived at the crime scene,Mims failed to identi-
fy Petitioner,instead he told police h e had been shot by
"Gangster Disciples".Furthermore,as familiar as Mims claimed he
was with Petitoner Parker,when he attempted to give police the
name of the person who had shot him,he stated that he had been
shot by "Karfel", and didn't know his last name.

Next,there was the identification by Kevin McCaster.He
testified that he witnessed the entire shooting as it took place.
He stated that the person who existed the front passenger side of
the vehicle was wearing a hooded sweatshirt which covered the top
of his head,and a face mask,which covered his face from the nose
down.(F.36,F.57)Kevin McCaster's identification of Petitioner is
contrary to the law of human nature and universal human experi-
ence.

When shooting occurs in an area,human experience dictates

7.

that one flees the scene without looking back to avoid being shot
Kevin McCaster testified that instead of running or ducking to
avoid being shot,he simply stood across the street and watched
the shooting take place.Moreover,just like Mims,Kevin McCaster
testified that he immediately recognized Petitioner despite being
masked and hooded.Yet,again like Mims,he failed to identify
Petitioner Parker as the shooter during his initial conversation
with police.Kevin McCaster would testify that he was afraid to
identify Petitioner Parker or his co-defendant,yet he was
unafraid to calmly stand by as the shooting took place,making
himself an easy target for the offenders.Furthermore,if Kevin
McCaster was truly afraid for his safety,the prudent course
would have been to assist police in the apprehension of the per-
son responsible for the shooting of his friend,thereby removing
any threat of that person harming him.Moreover,assuming arguendo
that fear was the primary motivation for Kevin's failure to
initially identify Petitioner,it does not explain why he couldnt
positively identify Petitioner from a photo array.

Days after the shooting,Kevin McCaster was escorted to
police headquarters,and shown a photo array containing Petitioner
Parker's picture.Kevin informed Detective Roberts that Petitioner
Parker "look like" the person who committed the offense.To com-
pound this unreliability,Kevin had to ask about the height of
Petitioner Parker and weight before hepicked Petitoner out of the
photo array,and his identification was not unequivocal.The weak-
nes of the identification of Petitonershould have served as the
basis of a pre-trial motion to suppress.

8.

In the case at bar,the identification of Petitioner was unbelievable.First,there is the fact that each witness had only a limited opportunity to view the offenders.It is inconceivable to believe that Antwan Mims and Quetin McCaster had time to identify a masked man who was shooting at them,regardless of what they may have testified to.

Furthermore,Kevin McCaster needed assistance from the police to identify Petitioner from the photo array.During the police interview,Kevin McCaster was shown a photo array which contained a picture of Petitioner.Kevin told police that Petitioner "look like" one of the shooters.Kevin then proceeded to ask police the height and weight of Petitoner.Then Kevin told police "I guess that's him".

Moreover,the lineup identification was equally tainted as Petitioner Parker was the only lineup participant who was wearing a black leather jacket,which was believed to be worn by one of the offenders.Thus,Counsel should have moved to have the identification pre-trial motion.Petitioner Parker is entitled to an evidentiary hearing on this issue to determine whether post-conviction relief is warranted.
(C)Ground Three

PETITIONER PARKER WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW,IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONTITUTION,WHERE THE PROSECUTION ALLOWED TO GO UNCORRECTED THE PERJURED TESTIMONY OF DETECTIVE JOHN ROBERTS.

During trial,the prosecution elicted testimony from Chicago Police Detective John Roberts,concerning the identifi-

9.

cation and arrest of Petitioner Parker. (T.R.F-93) Roberts testified then on January 22, 1997, he interviewed Antwan Mims who had been admitted into Mount Sinai Hospital as a result of being shot in the chest. (T.R. F-95) Roberts stated that it was during this interview that Mims icentified Petitioner Parker as the person who had shot him.(T.R. F-95)

During cross-examination,however,Roberts stated that Mims never identified Petitioner Parker specifically by name.Roberts testified that Mims had also identified two other individuals; other members of the Gangster Disciples street gangs,"G-Money" and "Dion",although Roberts stated that Mims only identified them as "associates" Petitioner Parker,but he never followed up to question them or interrogate them.Detective Roberts' testimony was false and should have been corrected by the pro-secution.

In Mooney v. Holohan,294 U.S. 103, 55 S.Ct. 340 (1935), the Court held that "[i]t is a requirement that cannot be deemed to be satified by mere notice and a hearing if a state has contrived a conviction through the pretense of a trial which is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of like results by intimidation". Mooney,294 U.S. at 112.

In the case at bar,the falsity of Roberts' testimony is

made evident by two factors.First,Detective Roberts testified
that Mims stated that  "G-Money" and "Dion" were gang associates
of Petitioner Parker.But,by his own admission,Mims had not yet
given the police the name of the suspect.Mims testified that he
didn't give Roberts the name "Karfel" until after his surgery
not in the emergency room as stated by Roberts. (T.R. E-53)
Moreover,the Supplementary Detective Report written after the
police interviewed Mims listed "G-Money" and "Dion" as possible
suspects; not associates of Petitioner.Petitioner Parker contends
that these facts,when taken together,clearly demonstrate that
Roberts perjured himself at trial.

In Napue v. Illinois,360 U.S. 264,79 S.Ct.1173 (1959),the
principle prosecution witness testified that he had been promised
no consideration for  his testimony.The Court held that the know-
ing use of false testimony to obtain a conviction violates due
process regardless of whether the prosecutor solicited the false
testimony or merely allowed it to go uncorrected when it appeared
The Court explained that the principle that a state may not know-
ingly use false evidence to obtain a conviction -- even false
testimony that goes only to the credibility of the witness -- is
"implicit in any concept of ordered liberty." Napue,360 U.S.at
269.

The principle announced in Napue makes clear that the
State's Attorney who is prosecuting the case will be charged with
the knowing use of perjured testimony,even though a prosecution
Witness attorney does not have actual knowledge of the perjury
introduced through a state witness,so long as another member of
the prosecution possesses information that may have established

11.

that the witness' testimony was false. <u>United States v. Agure</u>,
96 S.Ct.2392 (1976); see also <u>United States v. Bagley</u>,105 S.Ct.
3375 (1991)(when the prosecutor "knowingly [fails] to disclose
that testimony used to convict was false . . .[the conviction]
'must be set aside if there is any reasonable likelihood that the
false testimony could have affected the outcome of the trial'").

In the case at bar,there is no doubt that Roberts'false
taetimony was substantially relied upon by the Court to convict.
Roberts' testimony served to lend probative value to an otherwise
unreliable identification, and simultaneously (and impermissibly)
bolstered the integrity of a shoddy police investigation.

(D) Ground Four

> PETITIONER PARKER WAS DEINED EFFECTIVE ASSISTANCE OF COUNSEL,
> IN VIOLATION OF THE SIXTH AMENDMENT TO THE FEDERAL CONSTITU-
> ION,WHERE TRIAL COUNSEL FAILED TO FILE A MOTION TO QUASH
> ARREST,WHERE THE DETECTIVES HAD NO PROBABLE CAUSE TO ARREST
> PETITIONER.

Under Illinois Law,probable cause exists where,under the
totality of the circumstances,there is a reasonable basis to
believe that the accused has comitted an offense.<u>People v.Arm-</u>
<u>strong</u>,318 Ill.App.3d 607,743 N.E.2d 215 (1st Dist.2000). In the
instant case,the evidence in the detectives' possession at the
time of Petitioner's arrest was insufficient to satisfy the rea-
sonable basis standard.

First,Antwan Mims testified that during his interview
with the police in the emergency room,he told them that "Dion"
and  "G-Money" were responsible for the shooting.However,
Detective Roberts testified that Mims stated that these men

12.

were Gangster Disciple "Chiefs",and not personally involved in
the shooting,although they may have given the order.Assuming,
arguedo,that Roberts was being truthful,such information would
have prompted police to at least attempt to discover the identity
of these two (2) suspects for the purposes of interrogation.By
questioning the individuals,the identity of the persons respon-
sible for the shooting could have been confirmed.Instead,police
relied solely on the identificationsmade by Mims and The McCaster
ter's.Even though these identifications were highly unreliable.

The investigation was further compromised by the failure
of the police to attempt to verify the information given by Mims
and The McCaster's.Wyatt Hayes,who was also present at the crime
scene,testified that Walter Cage,the co-defendant in the instant
case,was not one of the offenders.Although this is not relevant
to Petitioner's guilt or innocence,it does cast doubts on the
believability of Mims and The McCaster's.

Police could have easily verified the truthfulness of Mims
and The McCaster's.Detective Roberts had access to the spentshell
casings recovered from the crime scene,but failed to have the
Chicago Police Crime Lab test them to determine whether Petitio-
ner's fingerprints were present.Also the investigating detectives
failed to interview Calvin Ridgell,or any other employee of
Bethany Hospital,to determine wheter Petitioner,Cage and Katina
Johnson were actually at the hospital as the shooting occured.Had
they conducted anthorough investigation,they would have obtained
video tape from the hospital to verify the accurate time we arri-
ved that morning.

13.

Furthermore,the investigating detectives never attempted
to locate the automobile or weapons used in the shooting,or
determine who was driving the vehicle.Again,such an investigation
would have been unreasonable,given the unreliability of Mims and
The McCaster's.Although their lack of reliability could have been
overcome by the strength of the other evidence,there was no such
evidence because no indepent police investigation corroborated
Mims' and The McCasters identification,or their inconsistent
version of the event.

Therefore,given the totality of the circumstances,police
had no reasonable basis to believe that Petitioner committed the
offense,and thus,no probable cause existed.

(E) Ground Five

PETITIONER PARKER WAS DENIED DUE PROCESS,OR THE LAW OF THE
VIOLATION OF THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTI-
TUTION,WHERE HE WAS DENIED AN OPPORTUNITY TO PRESENT MITI-
GATION EVIDENCE WHEN THE TRIAL COURT DENIED HIM A BRIEF CON-
TINUANCE AFTER HIS WITNESS BECAME ILL AND COULD NOT TESTIFY
IN HIS BEHALF.

Following a bench trial,the Petitoner Kafele Parker was
found guilty of first degree murder. (B.228) A sentencing hearing
was held on April 23,1998. (C.19) Prior to the aggravation phase
of the proceeding in Kafele Parker's case,the court had permitted
co-defendant Walter Cage a contiuance to obtain other counsel
over the prosecution's objection. (C.18) The co-defendant's case
was continued to May 20,1998. (C.18) In addition to one other

14.

witness in aggravation, the victim's father,brother and mother
read their  own victim impact statements during aggravation.
(C.29-34,36-45-50) The victim's uncle was called to the stand to
read the statement's of the victim's grandmother and former baby-
sitter. (C.38) But,when the uncle was unable to proceed,the pro-
secutor read those statements. (C.39-44) At the end of the
aggravation testimony,the court stated to defense counsel "[I]t
is a tough act to follow." (C.50) The court allowed defense
counsel a ten minute recess. (C.50)

     When proceedings resumed,defense counsel reported to the
court that he had intended to call Mr.Parker's mother as a miti-
gation witness in his behalf.(C.50) However,his mother had
suffered a double seizure and was being attended to by parame-
dics in front of the court. (C.51) Counsel represented to the
court that given the case itself,and the victims family state-
ments,she had become emotional. (C.51) Counsel explained to the
court that Mr. Parker's mother not only wanted to be present to
support her son during sentencing, but she also wanted to speak
to the court about her son's life.(C.51) She wanted an opportu-
nity to explain to the court that notwithstanding the claims by
the victim's family members,her son was not an animal,but a
person who could not have committed this offense. (C.52) Counsel
suggested that since the co-defendant had been given a continu-
ance to obtain other counsel,Mr.Parker's case in mitigation
should be contiued to that time to give Mrs.Parker a chance to
recover and present evidence in mitigation. (C.51)Counsel repre-
sented to the court that the condition was treatable and the

paramedics had suggested that she go to a hospital. (C.52)Again
the prosecution objected. (C.52)

The court denied Mr.Parker's motion on the grounds that
his mother might be even more nervous and she could only add
moral support for her son. (C.52-53) Defnese counsel was only
permitted to represent to the court what he believed Mr.Parker's
mother would tell the court. (C.53) Before imposing sentence.the
court said "[I]ń listening to the family of Booker Flowers, III,
read  those victim impact statements to me, the court was emo-
tionally taken by those statements.Some of the people in Booker
Flowers, III family described Kafele Parker in terms such as an
animal,coldblooded,ruthless,vicious or words to that effect.
Basically,if the shoe fits,then the man has to wear it..."(C.67)
The court imposed the maximum prison sentences of sixty years
for first degree murder and thirty years for attempt first degree
murder to run consecutively. (C.79)

Given the emotional testimony of the victim's family and
the effect it had on the court,Kafele Parker shpuld have been
permitted an equal opporunity to provide the court with mitiga-
tion evidence.Since he was deprived of a chance to do so,he now
asks this court to vacate his sentences and remand this cause for
a new sentencing hearing.

The granting or denial of a continuance is within the
discretion of the trial court,and the reviewing court will not
disturb that decision unless there has been a clear abuse of
that discretion.  People v. Wiiliams, 173 Ill.2d 48, 92, 670 N.E.
2d 638 (1993), 725 ILCS 5/114-4(E). The court shall consider the

diligence of the moving party,the reasons for the continuance
and  whether the defendant has had previous continuances. See
People v. Williams, 92 Ill. 2d 109, 116, 118-119,The court
shall also consider whether failure to allow a continuance has
prejudiced the defendant. People v.Sanchez, 115 Ill. 2d 238,271
503 N.E. 2d 277 (1986).

In order to determine an appropiate sentence,the trial
court shall hear and recieve evidence in aggrvation and miti-
gation regarding the defendant's moral character,life,family
occupation and criminal history. People v. Williams,  16 Ill.
App.3d 146,149, 305 N.E. 2d 333 (1973).Here,Kafele Parker was
denied an opportunity to provide the court with information
concerning his life and family history through live witness
testimony.After the prosecution presented victim impact state-
ments from the victim's family members,a brief recess was taken.
(C.50) When defense  counsel returned to open court,he advised
the court that Mr.Parker's mother was unable to testify because
she had been  stricken with a double seizure.(C.51)

There is no evidence that counsel was trying to delay the
administration of justice.He had obviously anticipated calling
Mrs.Parker to the stand to respond to the live witnesses in
aggravation. (C.50) The proposed witness had suddenly taken ill
after she had heard the victim's family member's calling her son
coldblooded,an animal and beyond rehabilitation. (C. 44, 49)
Further,notwithstanding the court's statement that Mrs.Parker was
capable of lending more than moral support. (C.52-55) Like member
of the victim's family,she certainly could have given relevant
testimony regarding the upbring of her son.

The presentence investigation report reflects that Mr.
Parker,who was 24-years old at the time of sentencing,lost
contact with his father at the age of 11-years old.(CL.35)His
mother was never married to his biological father,and she was
divorced from James Parker after six or seven years of marriage.
(CL.35) Mr.Parker told the probation officer that he had a
"rough" childhood. (CL.35) The report further reflects that Mrs.
Parker worked from time to time but also supported her family
with the help of Public Assistance. (CL.35) In addition to tell-
ing the court about her son's attentiveness to her and her medi-
cal needs,she would have been able to explain and expound upon
the matters contained in the presentence investigation report.
(CL.35, C.53-54) Simply forcing defense counsel to reiterate what
he expected her to say could in no way equate with or rebut the
emotionally charged victim impact testimony.

Mr.Parker sought only a brief continuance for his mother
to come into court and testify on his behalf. (C.54-55) There
would have been no hardship to the court's docket as the case of
his co-defendant had been continued for almost a month for
further  proceedings. (C.18, 51) The victims family would be
under no additional hardship as the prosecution suggested because
they had already given their testimony.If they so desired,they
would have to attend and testify in the co-defendant's senten-
cing hearing.In short,there could be no conclusion as the pro-
secutor suggested until after Walter Cage's case was over and
that would not be at least until May 20,1998. (C.18) When the

18.

trial started, the prosecution requested and recieved approxi-
mately one month to locate and call other witnesses. (A.4-5) Once
the trial started,Mr.Parker had not asked the court for any con-
tinuances.The court's rationale that Mrs.Parker would be even
more nervous and upset by the next court date was not based on
the evidence.Counsel explained that her condition was treatable
and hospitalization had been recommended.There was no indication
whatsoever that the hospitalization would extend to the next
court date.It was simply improper to use Mrs.Parker's illness or
disability as a means of excluding her from the proceedings and
preventing her testimony as a mitigation witness.

Exclusion of his mitigation witness prejudiced the defen-
dant.As reflected in his own comments, the court was caught up in
the emotion of the family's victim impact statements.The court
said "[I]n listening to the family of Booker Flowers, III, read
those victim impact statements to me,the court was emotionally
taken by those statements. Some of the people in Booker Flower,
III family described Kafele Parker in terms such as an animal,
coldblooded,ruthless,vicious or words to thet effect." If the
shoe fits,then the man has to wear it."The court had excluded
the one witness who could counteract this impression of
Mr.Parker.In so doing,the court excluded mitigation evidence
and clearly abused his discretion.

(F) Ground Six

    THE CONSECUTIVE SENTENCES IMPOSED ON PARKER ARE UNCONSTITU-
    TIONAL UNDER <u>APPRENDI V. NEW JERSEY</u> BECAUSE A FACT THAT IN
    INCREASED THE PRESCRIBED RANGE OF PENALTIES-WHETHER SEVERE
    BODILY INJURY WAS INFLICTED DURING THE COMMISION OF THE

19.

OFFENSE-WAS NOT CHARGED IN THE INDICTMENT,SUBMITTED TO A JURY,
AND PROVED BEYOND A REASONABLE DOUBT,IN VIOLATION OF THE SIXTH
AMENDMENT.

Kafele Parker was found guilty of the offenses of first degree
murder of Booker Flowers and of attempt murder of Antwan Mims.
The court sentenced Parker to 60 years for the murder and 30
years for the attempt murder and ordered the sentences to run
consecutively. (Supp.C. 78-79) The trial court imposed consecu-
tive sentences on the basis that the counts of murder and attempt
murder were committed during a single course of conduct,and
severe bodily harm occured during that single course of conduct.
730 ILCS 5/5-8-4(a) (1996).Section 5-8-4(a) of the Code of Cor-
rections states that "The court shall not impose consecutive
sentences for offenses which were committed as part of a single
course of conduct during which there was no substantial change
in the nature of the criminal objective,unless one of the offen-
ses for which defendant was convicted was a Class X or Class 1
felony and the defendant inflicted severe bodily injury." 730
ILCS 5/5-8-4(a) (1996). Here,however,the factual issue of whether
Kafele Parker inflicted severe bodily injury during the commiss-
ion of a Class X or Class 1 felony was never pled in his indict
ment,submitted to a jury,or proven beyond a reasonable doubt.
Because 730 ILCS 5/5-8-4(a) allows a court to impose consecutive
sentences based upon factual determinations that it alone makes,
it is unconstitutional. Apprendi v. New Jersey,530 U.S.466,147
L.Ed.2d 435,120 S.Ct.2348 (2000).

The consecutive sentencing scheme to which Parker was subjected is unconstitutional under Apprendi.The United States Supreme Court held in Apprendi that the Constitution requires that any fact that increases the prescribed range of penalties for an offense,other than the fact of a prior conviction,must be submitted to the jury and proved beyond a reasonable doubt. Apprendi,530 U.S.at 490.Although Apprendi did not specifically consider the constitutionaliy of a consecutive sentencing statute,Apprendi emphasized that it is unconstitutional for the legislature to remove from the jury the assessment of facts that increase the punishment to which a criminal defendant is exposed. Apprendi,530 U.S.at 490,Under Apprendi,it does not matter how the required finding is labeled,but whether it exposed the defendant to greater punishment than authorized by the jury's verdict. Apprendi,530 U.S.at 494.

The Court recognized that it was permissible for judge to exercise discretion in imposing a sentence within the range prescribed by statute based on consideration of factors related both to the offense and the offender.If,however,the defendant faces punishment more severe than the statutory maximum he would recieve if punished according to the facts reflected in the jury verdict alone,the fact that increased the penalty for the crime must be submitted to a jury and proved beyond a reasonable doubt. Apprendi,530 U.S.at 490.

Section 5-8-4(a) does not require that the factual determination of whether or not the defendant inflicted severe bodily injuring during the commission od a Class X or Class 1 felony be

21.

included in the charge,submitted to a jury,or proved beyond a reasonable doubt.Because the facts that served to make Parker's sentences consecutive were not pled in the indictment,submitted to the   jury,or proved beyond a reasonable doubt,Kafele Parker was denied his right to notice,due prcess and a jury trial.

This Court has found that consecutive sentences do not implicate the concerns articulated in Apprendi since consecutive sentences only affect the manner in which the defendant's senten- ces are served and do not extend a defendant's sentence beyond a prescribed range of penalty.People v.Wagener,196 Ill.2d 269,752 N.E.2d 430 (2001);People v. Carney,196 Ill.2d 518,752 N.E.2d 1137 (2001).However,this Court's analysis of Apprendi is fundamentally flawed since it ignores the practical effect of consecutive sen- tences.As Apprendi makes clear,labels cannot protect a statue from attack under the due process clause when that statue operate in precisely the manner that has been condemned as violative of a defendant'due process rights.Apprendi,530 U.S.at 494.Apprendi instructs that the relevant inquiry is one not of form,but of effect.Apprendi,530 U.S.at 494. In Ring v.Arizona,122 S.Ct.2439- 2440 (2002),the United States Supreme Court recently reaffirmed the language in Apprendi that it is the effect,not the form of the statute that governs the question of whether a sentence vio- lates due process.Therefore,Carney and Wagner are incorrect in rejecting that reasoning as superfluous to the holding.

Should this Court grant leave to appeal to reconsider its decisions in Wagner,and Carney,this Court should also determine whether Apprendi applies retroactively to post-conviction peti-

22.

tions.The appellate court districts are divided as to whether the Apprendi rule of notice and juey finding on proof beyond a reasonable doubt should be applied retroactively.The courts differ as to whether the rule of Apprendi constitutes a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the proceeding such that it is implicit in the concept of ordered liberty and should thus be applied retroactively under U.S. v. Teague,489 U.S. 288,311.See People v. Beachem.317 Ill.App 3d 693,740 N.E.2d 839 (1st Dist.2000);People v.Burns,254 Ill.App. 3d 912,748 N.E.2d 630 (1st Dist.2001):People v. Rush 322 Ill.App. 3d 1014,748 N.E.2d 832 (5th Dist.2001)(holding Apprendi is to be applied retroactively to timely first post-conviction petition). Compare,People v.Kizer,318 Ill.App.3d 340,741 N.E.2d 1103 (1st Dist.2000);People v.Coulter,321 Ill.App.3d 644,748 N.E.2d 240 (1st Dist.2001);People v.Helton,321 Ill.App.3d 420,749 N.E.2d 1007 (4th Dist.2001) (holding that Apprendi is not to be applied retroactively to post-conviction petitions).

Kafele Parker